**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | Case No. 14-cv-5125 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CONCESSION SERVICES, INC., JAMES | ) | |
| BREWER, ALFONSO SOTO, ARELYS | ) | |
| ARABU, ANGEL CLASS, AND DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Deckers Outdoor Corporation ("Deckers") hereby brings the present action against Concession Services, Inc., James Brewer, Alfonso Soto, Arelys Arabu, Angel Class, and DOES 1-100 and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over the Defendants because, on information and belief, each of the Defendants reside in the State of Illinois and have committed the tortious acts alleged herein below in the State of Illinois.

1

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, on information and belief, each of the Defendants reside in this Judicial District and the acts giving rise to the claims asserted herein below occurred in this Judicial District.

## II. INTRODUCTION

4.     This is an action for trademark counterfeiting, trademark infringement, and false designation of origin under the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)); and unfair competition under the Illinois Deceptive Trade Practices Act (815 ILCS 510, *et seq.*).

## III. THE PARTIES

5.     Plaintiff Deckers is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Goleta, California.

6.     Upon information and belief, Defendant Concession Services, Inc. ("CSI"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois, and owns and/or operates the Alsip Swap-O-Rama Flea Market located in Alsip, Illinois ("Alsip Market").

7.     Upon information and belief, Defendant James Brewer is an individual residing in the State of Illinois who operated a rented space or "booth" at the Alsip Market on at least February 12, 2011, and who offered for sale, distributed and sold products bearing counterfeit versions of the UGG trademarks ("Counterfeit UGG Products") on at least February 12, 2011 at the Alsip Market.

8.     Upon information and belief, Defendant Alfonso Soto is an individual residing in the State of Indiana who operated a rented space or "booth" at the Alsip Market on at least January 7, 2012, and who offered for sale, distributed and sold Counterfeit UGG Products on at least January 7, 2012 at the Alsip Market.

9.      Upon information and belief, Defendant Arelys Arabu is an individual residing in the State of Illinois who operated a rented space or "booth" at the Alsip Market on at least January 7, 2012, and who offered for sale, distributed and sold Counterfeit UGG Products on at least January 7, 2012 at the Alsip Market.

10.      Upon information and belief, Defendant Angel Class is an individual residing in the State of Illinois who operated a rented space or "booth" at the Alsip Market on at least December 15, 2013, and who offered for sale, distributed and sold Counterfeit UGG Products on at least December 15, 2013 at the Alsip Market.

11.      Upon information and belief, Defendants DOES 1 through 100 are individuals residing in Illinois and doing business in connection with the Alsip Market.

12.      Plaintiff is unaware of the names and true capacities of Defendants named herein as DOES 1 through 100, whether individual, corporate and/or partnership entities, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes, and based thereon alleges, that said Defendants DOES 1 through 100, are in some manner responsible for the wrongs alleged herein.

13.      Defendants Brewer, Soto, Arabu and Class, and DOES 1 through 100 (hereinafter collectively referred to as "Vendor Defendants") sell or sold Counterfeit UGG Products at the Alsip Market owned and/or operated by Defendant CSI.

14.      Plaintiff is informed and believes, and based thereon alleges, that at all relevant times herein, Defendant CSI knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.

3

### IV. DECKERS' FAMOUS UGG BRAND AND TRADEMARK RIGHTS

15.     Plaintiff Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium sheepskin footwear (the "UGG Products"). UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 authorized retailers in Illinois, the uggaustralia.com website and UGG Concept Stores, including a Concept Store located at 909 North Rush Street in Chicago, Illinois.

16.     Since acquiring the UGG trademark and the goodwill of the business in 1995, Deckers has continuously sold footwear and clothing under the UGG trademarks. Deckers has built substantial goodwill in the UGG trademarks. The UGG trademarks are famous and valuable assets of Deckers.

17.     Deckers is the owner of U.S. Trademark Registration No. 3,050,925 for its UGG registered trademark, U.S. Trademark Registration No. 2,314,853 for its Sun Logo registered trademark, U.S. Trademark Registration No. 3,624,595 for its Sun Design registered trademark, and U.S. Trademark Registration No. 4,234,396 for its stylized UGG registered trademark. The UGG registered trademark has been used continuously since at least as early as 1979 by Deckers and its predecessors in interest. The Sun Logo registered trademark has been used continuously since at least as early as 1997 in connection with footwear and clothing. The Sun Design registered trademark has been used continuously since at least as early as 2006 in connection with footwear. The stylized UGG registered trademark has been used continuously since at least as early as 1994 in connection with footwear and clothing. True and correct copies of U.S. Registration Nos. 3,050,925, 2,314,853, 3,624,595, and 4,234,396 are attached hereto as **Exhibit 1**. These trademark registrations are valid and subsisting pursuant to 15 U.S.C. § 1065. The

UGG registered trademark and the Sun Logo registered trademark are incontestable pursuant to 15 U.S.C. § 1065. The UGG registered trademark, the Sun Logo registered trademark, the Sun Design registered trademark, and the stylized UGG registered trademark are collectively referred to herein as the UGG Trademarks.

18.     The UGG Trademarks are distinctive when applied to high quality apparel, footwear, and related merchandise, signifying to the purchaser that the products come from Deckers and are manufactured to Deckers' high quality standards. Whether Deckers manufactures the products itself or licenses others to do so, Deckers has ensured that products bearing its trademarks are manufactured to the highest quality standards. Deckers' products branded under the UGG Trademarks have been widely accepted by the public and are enormously popular as demonstrated by over a billion dollars in sales last year. In view of its popularity, the UGG Trademarks are famous marks.

## V. DEFENDANTS' UNLAWFUL CONDUCT

19.     Upon information and belief, Defendants are engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing counterfeit imitations of the UGG Trademarks.

20.     Defendant CSI owns and/or operates the Alsip Market located at 4350 West 129th Street, Alsip, Illinois 60803. Defendant CSI rents indoor and outdoor spaces to vendors at Alsip Market on a daily or monthly basis in exchange for payment. The vendors use the spaces to sell various goods to the public.

21.     Upon information and belief, Defendant CSI charges the public an admission fee to enter the Alsip Market.

22.     Deckers has never authorized the sale of UGG merchandise or the use of the UGG Trademarks at the Alsip Market.

23.     Upon information and belief, Defendant CSI has allowed many of its vendors to sell or offer for sale merchandise bearing counterfeits of the UGG Trademarks.  Defendant CSI knew, knows, and had reason to know, of vendors' trademark violations.

24.     In plain view, law enforcement agencies have seized counterfeit items multiple times from vendors at the Alsip Market, including goods bearing counterfeits of the UGG Trademarks.  In plain view, law enforcement has arrested several of the Alsip Market's counterfeiting vendors, including those engaged in the sale of goods bearing counterfeits of the UGG Trademarks.

25.     While such unlawful activities were often open and/or obvious, on several occasions, Defendant CSI was notified of some of the counterfeiting taking place at the Alsip Market, including counterfeiting of the UGG Trademarks.

26.     Although Defendant CSI collectively owns, operates, supervises, manages and controls the Alsip Market, it has not done so in a manner to prevent the sale of items bearing counterfeits of intellectual property at Alsip Market.  Instead, on information and belief, Defendant CSI has acted to assist, facilitate, enable, aid and abet, and/or conceal such unlawful activity.

27.     Besides aiding and abetting its counterfeiting vendors and/or repeatedly looking the other way when counterfeiting is taking place at the Alsip Market, Defendant CSI has materially contributed to the counterfeiting activities taking place at the Alsip Market by providing the site and facilities and/or the environment for the vendors' unlawful conduct.

28.     Furthermore, Defendant CSI has failed to implement rules or employ practices and procedures that would reduce or eliminate the counterfeiting occurring at the Alsip Market, by failing to take affirmative steps to curb, prohibit, and/or prevent the sale of items bearing counterfeits of the UGG Trademarks.

29.     On or about December 11, 2010, a private investigator working for Deckers canvassed the Alsip Market.

30.     Deckers' investigator observed three (3) vendors operating booths at the Alsip Market whom were offering to sell, upon information and belief, Counterfeit UGG Products in plain view.

31.     Deckers' investigator made purchases from each of the vendors selling Counterfeit UGG Products.  Each of the three pairs of purchased boots were inspected by Deckers' investigator who determined that the boots were counterfeit and infringed on Deckers' UGG Trademarks.

32.     On or about February 12, 2011, Deckers' investigator assisted the Alsip Police Department with a criminal enforcement action at the Alsip Market (the "First Action").  The investigator observed Counterfeit UGG Products at Defendant Brewer's booth and a subsequent search of his booths revealed approximately thirty-nine (39) pairs of Counterfeit UGG Products being displayed and/or offered for sale.  Defendant Brewer and Brandon Robertson were arrested and charged with a Class A Misdemeanor for counterfeiting trademarks.

33.     All thirty-nine (39) pairs of Counterfeit UGG Products were seized and inventoried by the Alsip Police Department.

34.     The seized Counterfeit UGG Products were inspected by Deckers' investigator who determined that each good was counterfeit and infringed on Deckers' UGG Trademarks.

35.     On February 12, 2011, Defendant Brewer offered for sale thirty-nine (39) Counterfeit UGG Products.

36.     Upon information and belief, criminal proceedings against Defendant Brewer and Brandon Robertson were instigated on February 12, 2011.  Deckers' investigator attended said court proceeding and other hearings related to the counterfeit claim.

37.     Upon information and belief, charges against Brandon Robertson were dismissed. Defendant Brewer pled guilty to a Class A misdemeanor for counterfeiting trademarks, was sentenced to one year court supervision and was ordered to perform seven days in the Sheriff's Work Alternative Program.  Defendant Brewer was also ordered to pay a $300.00 (three hundred dollar) fine.

38.     On April 28, 2011, in response to the First Action, Deckers sent a cease and desist letter (the "First Notice") to Defendant CSI as the operator of the Alsip Market to compel its cooperation in ending the sale of Counterfeit UGG Products.  Upon information and belief, Defendant CSI failed to respond to the First Notice.  A true and correct copy of the First Notice is attached hereto as **Exhibit 2**.

39.     On December 31, 2011, Deckers' investigator returned to canvass the Alsip Market.  During the course of this canvass, Deckers' investigator observed three (3) different vendors offering for sale and, upon information and belief, selling Counterfeit UGG Products. The Counterfeit UGG Products offered for sale at each of the three booths were in plain view.

40.     Subsequently, Deckers' investigator and the Alsip Police Department returned to the Alsip Market on or about January 7, 2012 and conducted a criminal enforcement action (the "Second Action").

41.    During the Second Action, Deckers' investigator observed approximately thirty (30) pairs of Counterfeit UGG Products on display and offered for sale at the booth operated by Defendant Soto.

42.    Alsip Police took Defendant Soto into custody and performed a search of the booth and Defendant Soto's vehicle in which fifty-nine (59) pairs of Counterfeit UGG Products were found.  The Counterfeit UGG Products were seized and inventoried by the Alsip Police Department.  Alsip Police also seized $1,335.00 (thirteen hundred and thirty-five dollars) from Defendant Soto, which was in Defendant Soto's possession at the time he was taken into custody.

43.    Defendant Soto was charged with a Class A misdemeanor for counterfeiting trademarks.

44.    During the Second Action, Deckers' investigator and Alsip Police officers also approached the booth operated by Defendant Arabu, who, during the December 31, 2011 canvass, had at least two (2) pairs of Counterfeit UGG Products on display for sale.

45.    Defendant Arabu denied selling Counterfeit UGG Products during the Second Action on January 7, 2012.  Defendant Arabu then allowed Alsip Police officers to search his booth, which resulted in the seizure of eight (8) pairs of Counterfeit UGG Products.  The Counterfeit UGG Products were seized and inventoried by the Alsip Police Department.

46.    Defendant Arabu was taken into custody and charged with theft.

47.    During the Second Action, the Alsip Police Department observed and seized a total of one hundred and two (102) pairs of Counterfeit UGG Products, which were displayed and/or offered for sale by three different vendors of the Alsip Market.

48.    The Counterfeit UGG Products were inspected by Deckers' investigator who determined that each good was counterfeit and infringed on Deckers' registered UGG Trademarks.

49.    On January 7, 2012, Defendant Soto offered for sale fifty-nine (59) pairs of Counterfeit UGG Products.

50.    Upon information and belief, criminal proceedings against Defendant Soto were instigated on January 7, 2012.  Deckers' investigator attended said court proceeding and other hearings related to the counterfeit claim, relaying the court's decisions to Deckers.

51.    Upon information and belief, Defendant Soto pled guilty to an amended Class A misdemeanor charge for disorderly conduct.  He was sentenced to one year conditional discharge and the $1,335.00 (thirteen hundred and thirty-five dollars) in cash seized from him during the raid was forfeited to the Alsip Police Department.  The Counterfeit UGG Products seized from Defendant Soto were ordered to be destroyed.

52.    On January 7, 2012, Defendant Arabu offered for sale eight (8) pairs of Counterfeit UGG Products.

53.    Upon information and belief, criminal proceedings against Defendant Arabu were instigated on January 7, 2012.  Deckers' investigator attended said court proceeding and other hearings related to the counterfeit claim, relaying the court's decisions to Deckers.

54.    Upon information and belief, Defendant Arabu was fined $300.00 (three hundred dollars).

55.    On February 20, 2012, in response to the Second Action, Deckers sent a second cease and desist letter (the "Second Notice") to Defendant CSI as the operator of the Alsip Market.  A true and correct copy of the Second Notice is attached hereto as **Exhibit 3**.

56.     On or about February 28, 2012, Deckers received a letter from, upon information and belief, Defendant CSI stating that the Alsip Market rules specifically prohibit selling counterfeit goods, and claiming to have evicted a vendor selling counterfeit boots (the "Response").  While the Response mentions that signs are posted in conspicuous locations informing vendors that the sale of counterfeit goods is prohibited, the Response fails to detail what affirmative steps have been taken by Alsip Market to ensure that vendors are aware of and adhere to the rules.  A true and correct copy of the Response is attached hereto as **Exhibit 4**.

57.     Subsequently, Deckers' investigator, in conjunction with Cook County Sheriff's police officers, Chicago police officers, and Homeland Security Investigation agents, went to the Alsip Market on or about December 15, 2013 and conducted a criminal enforcement action (the "Third Action").

58.     During the Third Action, Defendant Class was taken into custody after fleeing from the Alsip Market and hiding in a nearby cemetery.  A search of Defendant Class's booth revealed twenty-eight (28) pairs of Counterfeit UGG Products.  The Counterfeit UGG Products were seized and inventoried by the Cook County Sheriff's Police Department.

59.     Defendant Class, who was also previously arrested at the Alsip Market in a separate counterfeit enforcement action on or about April 6, 2013, was charged with a Class A Misdemeanor for counterfeiting trademarks on or about December 15, 2013.

60.     The seized Counterfeit UGG Products were inspected by Deckers' investigator who determined that each good was counterfeit and infringed on Deckers' registered UGG Trademarks.

61.     Upon information and belief, criminal proceedings against Defendant Class were instigated on December 15, 2013.  Deckers' investigator attended said court proceeding and other hearings related to the counterfeit claim.

62.     Upon information and belief, criminal proceedings against Defendant Class are currently pending.

63.     On February 4, 2014, in response to the Third Action, Deckers sent a third cease and desist letter ("Third Notice") to Defendant CSI.  Upon information and belief, Defendant CSI failed to respond to the Third Notice.  A true and correct copy of the Third Notice is attached hereto as **Exhibit 5**.

64.     On or about February 16, 2014, Deckers' investigator canvassed the Alsip Market to assess whether Defendant CSI had complied with Deckers' First, Second or Third Notices. During the course of the canvass, Deckers' investigator observed three vendors displaying and/or offering for sale Counterfeit UGG Products.  Deckers' investigator made purchases from each of the three vendors selling Counterfeit UGG Products.

65.     The purchased goods were inspected by Deckers' investigator who determined that each and every good was counterfeit and infringed on Deckers' registered UGG Trademarks and other intellectual property.

66.     Upon information and belief, Vendor Defendants intend to continue to design, manufacture, advertise, promote, import, distribute, sell, and/or offer for sale the Counterfeit UGG Products.

67.     Defendants are well aware of the extraordinary fame and strength of the UGG Trademarks and the goodwill associated therewith.

68.     Defendants have no license, authority, or other permission from Deckers to use the UGG Trademarks in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Counterfeit UGG Products.

69.     Defendants have been engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally, with reckless disregard or willful blindness to Deckers' rights, or with bad faith, for the purposes of trading on the goodwill and reputation of the UGG Trademarks.

70.     Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit UGG Products and Deckers.

71.     Despite the First, Second, and Third Actions, in which six (6) different individual vendors were arrested and one hundred sixty-nine (169) pairs of Counterfeit UGG Products were seized, Defendant CSI has, upon information and belief, allowed and continues to allow these substantial and ongoing violations of Deckers' rights by vendors at the Alsip Market.

72.     Despite receiving the First, Second, and Third Notices, Defendant CSI has, upon information and belief, allowed and continues to allow these substantial and ongoing violations of Deckers' rights by vendors at the Alsip Market.

73.     The illegal activity which has taken place at the Alsip Market has occurred despite the fact that Defendant CSI has (and has had) the right and ability to control its vendors, including the Vendor Defendants.

74.     Upon information and belief, Defendant CSI knows, knew or should have known that a substantial amount of items bearing counterfeits of the UGG Trademarks have been (and are being) sold or offered for sale at the Alsip Market.

75.     Defendant CSI has failed to supervise its premises and comply with its legal obligations to curb counterfeiting at the Alsip Market because they would make less money if it was to evict its counterfeiting vendors.

76.     Defendant CSI has been aware of, materially contributed to, and obtained a financial benefit from the sale of merchandise bearing counterfeits of intellectual property at the Alsip Market, including the UGG Trademarks.

77.     By engaging in its unlawful conduct, Defendant CSI has enjoyed the financial fruits of continuing to do business with its counterfeiting vendors.

78.     Under the circumstances, Defendant CSI had (and still has) an obligation to take steps necessary to curb or end the counterfeiting of the UGG Trademarks at the Alsip Market. However, they have failed to do so.  Upon information and belief, the counterfeiting of the UGG Trademarks by vendors at the Alsip Market continues to this very day.

79.     Defendant CSI has acted with reckless disregard for Deckers' rights.

80.     Deckers is suffering irreparable injury, has suffered substantial damages as a result of Defendants' activities, and has no adequate remedy at law.

**COUNT I**
**(Trademark Counterfeiting, 15 U.S.C. § 1114, against Vendor Defendants)**

81.     Deckers repeats and re-alleges the allegations set forth in paragraphs 1-80.

82.     Vendor Defendants, without authorization from Deckers, have used or are continuing to use in commerce reproductions, counterfeits, copies, or colorable imitations of Deckers' registered UGG Trademarks in connection with the sale, offering for sale, distribution or advertising of Counterfeit UGG Products.

83. Upon information and belief, Vendor Defendants have knowledge of Deckers' rights in the UGG Trademarks, and are willfully infringing and intentionally using counterfeits of the UGG Trademarks.

84. Vendor Defendants' willful, intentional and unauthorized use of the UGG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

85. Vendor Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

86. Upon information and belief, Vendor Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

87. Upon information and belief, Vendor Defendants intend to continue their infringing acts, unless restrained by this Court.

88. The Vendor Defendants' acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law. If Vendor Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its well-known UGG Trademarks.

89. The injuries and damages sustained by Deckers have been directly and proximately caused by Vendor Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit UGG Products.

## COUNT II
## (Trademark Infringement, 15 U.S.C. § 1114, against Vendor Defendants)

90. Deckers repeats and re-alleges the allegations set forth in paragraphs 1-89.

91. Vendor Defendants, without authorization from Deckers, have used or are continuing to use in commerce reproductions, counterfeits, copies, or colorable imitations of

Deckers' registered UGG Trademarks in connection with the sale, offering for sale, distribution or advertising of Counterfeit UGG Products.

92.     Upon information and belief, Vendor Defendants have knowledge of Deckers' rights in the UGG Trademarks, and are willfully infringing and intentionally using counterfeits of the UGG Trademarks.

93.     Vendor Defendants' willful, intentional and unauthorized use of the UGG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public. Vendor Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

94.     Upon information and belief, Vendor Defendants intend to continue their infringing acts, unless restrained by this Court.

95.     Vendor Defendants' acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law.  If Vendor Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its well-known UGG Trademarks.

96.     The injuries and damages sustained by Deckers have been directly and proximately caused by Vendor Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit UGG Products.

**COUNT III**
**(False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against Vendor Defendants)**

97.     Deckers repeats and re-alleges the allegations set forth in paragraphs 1-96.

98.     Vendor Defendants' promotion, advertising, distribution, sale, and/or offering for sale of Counterfeit UGG Products, together with Vendor Defendants' use of other indicia associated with Deckers is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Counterfeit UGG Products, and is intended, and is likely to cause such parties to believe in error that the Counterfeit UGG Products have been authorized, sponsored, approved, endorsed or licensed by Deckers, or that Vendor Defendants are in some way affiliated with Deckers.

99.     By using the UGG Trademarks on the Counterfeit UGG Products, Vendor Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit UGG Products.

100.     Vendor Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit UGG Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

101.     Upon information and belief, Vendor Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled. Upon information and belief, the Vendor Defendants intend to continue their infringing acts, unless restrained by this Court.

102.     Vendor Defendants' acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law.  If Vendor Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its UGG brand.

## COUNT IV
### (Unfair Competition, Illinois Consumer Fraud and Deceptive Business Practices Act, against Vendor Defendants)

103.     Deckers repeats and re-alleges the allegations set forth in paragraphs 1-102.

104.     The foregoing acts of Vendor Defendants constitute unfair competition in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

105.     Vendor Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit UGG Products as those of Deckers; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Deckers' UGG Products; representing that their products have Deckers' approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

106.     Upon information and belief, Vendor Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

107.     Upon information and belief, Vendor Defendants intend to continue their infringing acts, unless restrained by this Court.

108.     Vendor Defendants' acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law.  If Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its UGG brand.

## COUNT V
### (Contributory Trademark Counterfeiting, 15 U.S.C. § 1114, against Defendant Concession Services, Inc.)

109.     Deckers repeats and re-alleges the allegations set forth in paragraphs 1-108.

18

110. Vendors, including the Vendor Defendants, without authorization from Deckers, have used and/or are continuing to use in commerce reproductions, counterfeits, copies, or colorable imitations of Deckers' registered UGG Trademarks in connection with the sale, offering for sale, distribution or advertising of Counterfeit UGG Products.

111. Upon information and belief, vendors, including the Vendor Defendants, have knowledge of Deckers' rights in the UGG Trademarks, and are willfully infringing and intentionally using counterfeits of the UGG Trademarks.

112. Vendors', including the Vendor Defendants, willful, intentional and unauthorized use of the UGG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

113. Vendors', including the Vendor Defendants, acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

114. Vendors, including the Vendor Defendants, rent space from Defendant CSI or otherwise are given permission to use such space by Defendant CSI to sell goods at the Alsip Market. Defendant CSI benefited from the sale of these goods. Defendant CSI has the right and ability to control vendors, including the Vendor Defendants.

115. Upon information and belief, Defendant CSI knew or had reason to know of the violations being committed by Vendor Defendants on their premises and failed to take reasonable action to curb such violations.

116. Through its actions, inaction, and conduct, Defendant CSI has materially contributed to the above-described counterfeiting and infringement of the UGG Trademarks.

117. The acts of Defendant CSI constitute contributory trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

118. Upon information and belief, Defendant CSI has made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

119. Upon information and belief, Defendant CSI intends to continue its infringing acts, unless restrained by this Court.

120. Defendant CSI's acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law.  If Defendant CSI's actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its well-known UGG Trademarks.

## COUNT VI
### (Contributory Trademark Infringement, 15 U.S.C. § 1114, against Defendant Concession Services, Inc.)

121. Deckers repeats and re-alleges the allegations set forth in paragraphs 1-120.

122. Vendors, including the Vendor Defendants, without authorization from Deckers, have used and are continuing to use in commerce reproductions, counterfeits, copies, or colorable imitations of Deckers' registered UGG Trademarks in connection with the sale, offering for sale, distribution or advertising of Counterfeit UGG Products.

123. Upon information and belief, vendors, including the Vendor Defendants, have knowledge of Deckers' rights in the UGG Trademarks, and are willfully infringing and intentionally using counterfeits of the UGG Trademarks.

124. Vendors', including the Vendor Defendants, willful, intentional and unauthorized use of the UGG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

125. Vendors', including the Vendor Defendants, acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

126.    Vendors, including the Vendor Defendants, rent space from Defendant CSI or otherwise are given permission to use such space by Defendant CSI to sell goods at the Alsip Market.  Defendant CSI benefited from the sale of these goods.  Defendant CSI has the right and ability to control vendors, including the Vendor Defendants.

127.    Upon information and belief, Defendant CSI knew or had reason to know of the violations being committed by Vendor Defendants on its premises and failed to take reasonable action to curb such violations.

128.    The acts of Defendant CSI constitute contributory trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

129.    Upon information and belief, Defendant CSI has made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

130.    Upon information and belief, Defendant CSI intends to continue its infringing acts, unless restrained by this Court.

131.    Defendant CSI's acts have damaged and will continue to damage Deckers, and Deckers has no adequate remedy at law.  If Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its well-known UGG Trademarks.

**WHEREFORE**, Deckers respectfully requests that this Court enter judgment against Defendants as follows:

1) Finding that:  (i) Defendants have violated Section 32 of the Lanham Act (15 USC § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and Vendor Defendants have engaged in unfair competition in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

2) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the UGG Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine UGG Product or is not authorized by Deckers to be sold in connection with the UGG Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG Product or any other product produced by Deckers that is not Deckers' or not produced under the authorization, control, or supervision of Deckers and approved by Deckers for sale under the UGG Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit UGG Products are those sold under the authorization, control, or supervision of Deckers, or are sponsored, approved by, or otherwise connected with Deckers;

    d. further infringing the UGG Trademarks and damaging Deckers' goodwill;

    e. otherwise competing unfairly with Deckers in any manner; and

    f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers trademark, including the

UGG Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof;

3) Requiring Defendants to recall from any distributors and retailers and to deliver to Deckers for destruction or other disposition all remaining inventory of all Counterfeit UGG Products, including all advertisements, promotional and marketing materials therefore, as well as means of making same;

4) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Deckers a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 2, a through f, supra;

5) Directing such other relief as the Court may deem appropriate;

6) That Deckers be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000.00 (two million dollars) for each and every use of the UGG Trademarks, or alternatively, that Deckers be awarded all profits realized by Defendants' wrongful acts, also Deckers' actual damages, and also directing that such profits or actual damages be trebled, in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

7) That Deckers be awarded actual and punitive damages to which it is entitled under applicable federal and state laws;

8) That Deckers be awarded its reasonable costs, attorneys' fees, investigatory fees, and expenses;

9) That Deckers be awarded pre-judgment interest on any monetary award made part of the judgment against Defendants; and,

10) Awarding Deckers such additional and further relief as the Court deems just and proper.

Dated this 7th day of July 2014.

Respectfully submitted,

   /s/ Justin R. Gaudio               

Paul G. Juettner
Justin R. Gaudio
Jessica Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
pjuettner@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Deckers Outdoor Corporation*